# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-AA-0846

ADONIS HOLLAND, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

ONCORE CONSTRUCTION COMPANY ET AL., INTERVENORS.[*]

On Petition for Review of a Decision of the Compensation Review Board of the
District of Columbia Department of Employment Services
(CRB-25-16)

(Submitted June 22, 2017                              Decided May 11, 2018)[+]

*David M. Snyder* was on the brief for petitioner.

*Jose L. Snyder* was on the brief for intervenors.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the statement was filed, and *Loren L. AliKhan*, Deputy Solicitor General at the time the statement was filed, were on the statement in lieu of brief.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and WASHINGTON, *Senior Judge*.[±]

---

[*] Guaranty Fund Management Services was the other intervenor.

[+] The decision in the case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of the Petitioner's motion to publish.

BLACKBURNE-RIGSBY, *Chief Judge*: Petitioner Adonis Holland seeks review of a Compensation Review Board ("CRB") Decision and Order affirming the Administrative Law Judge's ("ALJ") denial of Petitioner's continued prescription for oxycodone based on the finding that the medication was not "reasonable and necessary." *See Reynolds v. District of Columbia Dep't of Emp't Servs.*, 86 A.3d 1157, 1160-61 (D.C. 2014); *see also* D.C. Code § 32-1507 (2012 Repl.). Petitioner argues that substantial evidence did not support the CRB's finding because the ALJ failed to adequately consider Petitioner's testimony. We reverse and remand.

## I.

On September 8, 1999, Petitioner fell twenty-five feet from a ladder, sustaining back and leg injuries while employed by Oncore Construction Company ("Employer"). From September 20, 1999 to late 2011, Petitioner received medical treatment from Dr. Hampton Jackson, an orthopedic doctor, who opined that

---

(. . . continued)

[±] Senior Judge Reid was originally assigned to this case. She retired prior to issuance of the Memorandum Opinion and Judgment. Following her retirement on December 12, 2017, Senior Judge Washington was assigned to take her place.

Petitioner suffered from lumbar strain, chemical radiculitis,[1] and lumbar disc syndrome. Dr. Jackson treated the Petitioner with various modalities; he prescribed home exercise, pain medications, physical therapy, Intravenous Neural Enhancement Therapy, trigger point injections, and a lumbar brace. None of these treatments gave the Petitioner extended satisfactory pain abatement. Between September 9, 2002 and July 25, 2011, Petitioner also saw Dr. Robert E. Collins several times to undergo an Independent Medical Evaluation ("IME"). In an April 12, 2006 report, Dr. Collins diagnosed Petitioner with lumbar strain with chronic low back pain and a herniated disc, and opined that Petitioner should continue taking pain medications and not undergo surgery. In a November 30, 2007 report, Dr. Collins opined that Petitioner had reached maximum improvement, that he could perform sedentary to light duty work, and that he had no objection to Petitioner's pain medication at the time, Flexeril. In a May 16, 2008 report, Dr. Collins noted that Petitioner continued to have chronic low back pain, that the pain medication Petitioner was using was appropriate, and that no further treatment was indicated.

---

[1] Chemical radiculitis is an inflammatory condition affecting the spinal nerve root causing dissemination of disk fluid along the nerve sheath.

On January 5, 2011, Dr. Jackson examined Petitioner and opined that he could no longer participate in work activity, and that Petitioner's condition had worsened over the years. Dr. Jackson prescribed Petitioner oxycodone in 2011 instead of the Endocet he had previously prescribed, and also administered intermittent lumbar epidural steroid injections.[2]

In a July 25, 2011 IME report, Dr. Collins opined that Petitioner continued to suffer from chronic lumbar strain with a herniated disk and some intermittent radiculopathy, which was confirmed by electromyography and nerve conduction tests. Dr. Collins also opined that Petitioner had a limited response to the epidural injections he had previously received from Dr. Jackson, and that Petitioner should be weaned off the pain medication dosage he was taking for his back pain.

---

[2] Petitioner filed a claim for workers' compensation benefits covering reimbursement for medical treatment and out-of-pocket mileage expenses incurred for transportation to and from medical appointments from June 26, 2000 through April 19, 2011. For this hearing, Petitioner underwent a Peer/Medical Record Review conducted by Dr. Robert Holladay, a Board Certified Orthopedic Surgeon, on January 14, 2013. ALJ Karen R. Calmeise issued a Compensation Order on October 21, 2013 finding Petitioner's claim to be compensable under the D.C. Workers' Compensation Act. In the Order, she cited to the Peer Review, which stated that oxycodone was recommended "if it improves function" and "if it was provided by one practitioner." ALJ Calmeise then concluded that "Oxycodone was appropriate because the medication was prescribed by Dr. Jackson, the primary treating physician and [Petitioner] testified that the Oxycodone helped relieve his pain symptoms better than the previously prescribed Endocet."

In September 2012, after Dr. Jackson passed away, Petitioner continued receiving treatment, approximately once per month, from Dr. Richard Ashby, a family practitioner who had been on a list of doctors provided by Dr. Jackson's office.

Petitioner subsequently filed a claim for compensation pursuant to D.C. Code § 32-1520 (a) (2012 Repl.) seeking reimbursement for his visits with Dr. Ashby and oxycodone medication from February 7, 2013 through December 1, 2015. The Employer challenged the necessity and reasonableness of this medication and requested a Utilization Review ("UR") report.[3] Dr. Mark Friedman compiled the UR report based on a review of Dr. Ashby's records but did not interview or examine Petitioner.

The UR report[4] noted that Dr. Ashby's records did not contain "a comprehensive evaluation with regard to the nature and sources of [Petitioner's]

---

[3] A UR report evaluates the "necessity, character, and sufficiency of both the level and quality of medically related services provided an injured employee based upon medically related standards." D.C. Code § 32-1501 (18A) (2012 Repl.).

[4] In drafting the UR report, Dr. Friedman relied on Dr. Ashby's notes from September 5, 2012 to October 9, 2014, yet stated that the UR report addressed the

(continued . . .)

back pain, review of his prior records, imaging studies or EMG's [electromyography], or referral for appropriate diagnosis and management of his reported chronic pain symptoms." The UR report also noted that Dr. Ashby's records referred to psychiatric symptoms of depression and anxiety, but that there was "no reasoning or documentation of the potential role of psychiatric symptoms contributing to [Petitioner's] chronic pain symptoms" and that there was no referral for a mental health assessment.

The UR report further noted that opioid use "should be monitored closely, and restricted to patients not highly vulnerable to drug dependence, abuse, or addiction." The UR report stated that "[t]he absence of a contract for controlled substances for nearly two years following the initiation of chronic narcotic therapy, along with monitoring of urine for potential abuse, is again substandard care and not compliant with guidelines for chronic pain management."[5] The UR report

---

(. . . continued)
question of whether Dr. Ashby's treatment from August 3, 2012 to the present date of March 19, 2015 was necessary and appropriate.

[5] The UR report incorrectly stated that Petitioner was not undergoing drug tests. Dr. Ashby's records demonstrate that urine tests were conducted on a regular basis, beginning at the very latest, on December 5, 2012, and that there was a protocol in place to safeguard against substance abuse prior to signing a controlled substances contract.

concluded that the care rendered by Dr. Ashby to the Petitioner from September 2012 through October 2014 did not meet appropriate guidelines for management of chronic pain syndrome and that the use of narcotic pain medication was "not considered [a] medically appropriate treatment for chronic lumbar pain of this nature."[6]

At a hearing on December 1, 2015, ALJ Mark W. Bertram questioned the Petitioner about his treatment with Dr. Ashby. The Petitioner testified that when he began treatment with Dr. Ashby, Dr. Ashby performed a physical examination and reviewed Petitioner's prior medical records.[7] Dr. Ashby proposed options to Petitioner, such as alternative treatments and weaning off the oxycodone; Petitioner testified, however, that he had previously tried physical therapy, cortisone shots, and epidurals under Dr. Jackson's supervision, but that none of these options offered him relief. Petitioner further testified that he declined

---

[6] The UR report also stated that "[l]ong term opiates (narcotics) are recommended as a first-line treatment for chronic non-malignant pain[,]" which appears to be missing the word "not," given that this conclusion as written contravenes the text that follows.

[7] Dr. Ashby referenced "psychiatric symptoms of anxiety and depression" but did not document how these symptoms contributed to Petitioner's pain and did not suggest treatment for these issues. The UR report states that psychological causes need to be considered when prescribing opioids such as oxycodone.

psychiatric counseling and back surgery.[8]  Petitioner testified that Dr. Ashby refilled his prescription for oxycodone, and that Dr. Ashby conducted random urine testing and had Petitioner sign a controlled substances consent form in 2014 to ensure compliance with his treatment.[9]  Petitioner indicated that he needed the oxycodone to participate in everyday activities and would suffer extreme pain if he did not take it.  Petitioner testified that he took his medication precisely as prescribed and that missing more than an hour would leave him in extreme pain.

Dr. Ashby also recommended that Petitioner should "stay active" and "lose weight."  Petitioner testified that he walked as much as he could in an attempt to keep his weight under control, but that he often stayed in bed because the pain without oxycodone was unbearable.

---

[8]  Petitioner explained that he found spiritual guidance of greater benefit than counseling.  He stated that he declined surgery because of the medical expenses he would incur, and because of concerns about the possibility that his condition would not improve with surgery.  The ALJ stated that it was "admirable that [Petitioner] weighed the pros and cons of surgery, cause surgery's [sic] not for everybody."

[9]  Dr. Ashby's act of prescribing the oxycodone reflects his belief that the oxycodone was reasonable and necessary.  *See Reynolds, supra*, 86 A.3d at 1162 (stating that "it is logical to conclude that a doctor's continued prescription of medication, especially narcotics, is an implicit statement that the doctor believes it is reasonable and necessary for treating the patient").

At the end of the hearing, ALJ Bertram stated that he found the Petitioner to be "very credible" and stated his belief that the petitioner testified truthfully. ALJ Bertram, after finding Petitioner to be lucid, also stated that, "by viewing [Petitioner], I don't think there's a problem with the opioid part, so I don't want there to be one."

On January 27, 2016, ALJ Bertram issued a Compensation Order concluding that Petitioner's continued use of oxycodone was not reasonable or necessary. ALJ Bertram explained that his decision was based on the entire record being "considered and weighed" and stated that "[t]he recommendations and conclusions of the UR are accepted." The Compensation Order concluded that, while Dr. Ashby consistently diagnosed Petitioner with lumbar disc disorder, the medical records did not elaborate on the back condition or the specific cause of pain. Further, while Petitioner testified that he took oxycodone as prescribed, his treatment records did not reflect any additional treatment orders or recommendations from Dr. Ashby, other than staying active and losing weight. Moreover, ALJ Bertram found that the UR report warned that prescribing opioids on a regular basis is considered a "substandard approach" to pain management because narcotics are addictive and may result in undesirable side effects.

Petitioner appealed the Compensation Order to the CRB, which, on August 2, 2016, issued an order affirming the Compensation Order, stating that the ALJ made its determination based on a consideration of all the evidence, including Dr. Friedman's UR report, Dr. Ashby's records, and Petitioner's testimony. The CRB specifically noted that the ALJ considered Petitioner's testimony that he had tried alternate therapies in addition to the oxycodone.[10] This petition for review followed.

## II.

"Our principal function in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues." *Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 916 A.2d 149, 151 (D.C. 2007) (internal quotation marks omitted). We must affirm the CRB's decision "unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Clark v. District of Columbia Dep't of*

---

[10] The CRB discussed Petitioner's reference to a prior Compensation Order (dated October 17, 2015), which authorized his oxycodone use, and concluded that the reference to the prior Order indicated that Petitioner was seeking a modification of the present Compensation Order. The CRB concluded that since a modification of a prior Compensation Order is governed by procedures in D.C. Code § 32-1524, the issue was outside the scope of Petitioner's appeal.

*Emp't Servs.*, 772 A.2d 198, 201 (D.C. 2001). While we review the decision of the CRB, not the ALJ, we cannot ignore the ALJ's decision. *See WMATA v. District of Columbia Dep't of Emp't Servs.*, 992 A.2d 1276, 1280 (D.C. 2010). We must ensure that "(1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 971 A.2d 909, 915 (D.C. 2009). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Placido v. District of Columbia Dep't of Emp't Servs.*, 92 A.3d 323, 327 (D.C. 2014).

## III.

The CRB explained that its review is limited to a determination of whether the ALJ's decision was supported by substantial evidence. *See Marriott Int'l v. District of Columbia Dep't of Emp't Servs.*, 834 A.2d 882, 885 (D.C. 2003) (explaining that the CRB cannot disregard the ALJ's factual conclusions and reach its own from an individual review of the record). In upholding the ALJ's determination, the CRB opined that the Compensation Order "reflect[ed] a full consideration of the UR and Dr. Ashby's records, and . . . supports the ALJ's

determination that the Oxycodone use alone . . . is . . . an unreasonable approach to managing chronic low back pain, and that the record fails to reveal any other recent or contemplated co-therapies." The CRB further recognized that the ALJ's Compensation Order acknowledged Petitioner's testimony that he had tried other therapies, but that Dr. Ashby's records contained no references to any alternative treatments. Moreover, the ALJ noted that Dr. Ashby's records did not contain a treatment or investigative plan "as to the causes of [Petitioner's] back pain or other possible treatment alternatives[,]" nor did they contain any "imaging studies, physical therapy or psychological therapy as pointed out by the UR." For these reasons, the ALJ concluded that the UR report was more persuasive on the issue of the reasonableness and necessity of Dr. Ashby's treatment.

The CRB erred in determining that the ALJ's findings were supported by substantial evidence, and that his conclusions of law flowed rationally from his findings of fact. Critically, the Compensation Order failed to (1) account for evidence that alternative therapies had been unsuccessful; and (2) consider the use of opioids relative to the Petitioner's circumstances. Both of these issues are material to the determination of whether the oxycodone use was reasonable and necessary.

The ALJ stated that Petitioner's "medical records are void of any elaborations regarding [Petitioner's] back condition and the specific causes" and noted that, although Petitioner testified that he had tried other therapies, "Dr. Ashby's records are void of any references to alternative treatments that were considered or ordered." The ALJ found this problematic given that the "UR also points out that the use of opioids should be used as part of a multi-modal therapy."

Although Dr. Ashby's records did not indicate other treatments, the Petitioner testified that he tried physical therapy, cortisone shots, and epidurals under Dr. Jackson's supervision, yet none of these offered him relief. At the hearing, ALJ Bertram stated that he found Petitioner's testimony to be credible; he also noted that the Petitioner had weighed the pros and cons of back surgery, and determined that it was not right for him. Petitioner's credibility was further bolstered by the prior Compensation Order which was entered into evidence and provided details regarding Petitioner's prior attempts at alternative treatments. Moreover, during the hearing, the Employer stated that they had Petitioner "seen by IME physicians before in the past" and that "[t]hey typically said he'd reached MMI [maximum medical improvement], that there wasn't any treatment that he needed." The Employer continued: "So I guess that's our opinion as far as what

other medical treatment might help him. Dr. Ashby's [sic] at no point said anything different, other than just keep taking meds."

This evidence all contravenes the UR report's recommendation suggesting that the use of alternative treatments was reasonable and necessary, as this evidence suggests that alternatives were considered and did not work, a conclusion that the Employer orally acknowledged at the hearing. The CRB, in reviewing ALJ Bertram's decision, summarily opined that "the record supports the ALJ's determination that the Oxycodone use alone, without any other treatment interventions, is condemned by the UR report as an unreasonable approach to managing chronic low back pain" and that the Compensation Order "reflect[ed] a full consideration of the UR and Dr. Ashby's records." In *Straughn v. District of Columbia Department of Employment Services*, we held that an ALJ was required to address the Petitioner's testimony that, if credited, "could tend to undermine a conclusion that [Petitioner's] symptoms were attributable to [a] preexisting [condition] . . . ." 176 A.3d 125, 128 (D.C. 2017). Although ALJ Bertram briefly referred to Petitioner's testimony about other treatments, he did not appear to weigh this evidence in deciding to credit the UR report over Dr. Ashby's treatment records, which is inconsistent with the ALJ's obligation to "weigh the competing opinions based upon the record as a whole." *Haregewoin v. Loews*,

CRB No. 08-068, 2008 DC Wrk. Comp. LEXIS 32, at *8 (Feb. 19, 2008); *see also*

*Darden v. District of Columbia Dep't of Emp't Servs.*, 911 A.2d 410, 416 (D.C.

2006) (stating that "[a]n agency fails to base its decision on substantial evidence in

the record when it ignores material evidence in the record").

Similarly, the ALJ accepted the UR report's generalized conclusion that the

use of "controlled substances on a regular basis for non-cancer pain is considered

to be a substandard approach to the management of chronic pain syndromes"

because "narcotics are addictive, and often ineffective, and may lead to a variety of

undesirable outcomes and side effects when prescribed on a regular basis for non-

cancer pain."[11] This generalized conclusion, however, does not appear to have

been considered in the context of Petitioner's evidence, which suggested that the

opioids had been effective[12] in alleviating his pain and that petitioner did not have

---

[11] ALJ Bertram stated during the February 1, 2015 hearing that he "thought the Utilization report laid out some very compelling stats and statistics about the long-term use of narcotics." He then stated, "That's my concern in this case."

[12] Some of Dr. Ashby's treatment records that postdate the treatment records discussed in the UR report suggest that the Petitioner was responding favorably to the oxycodone. A March 10, 2015 note stated that "medication makes pain better" and that "pain w/ meds is 6/10." A January 9, 2015 note stated that "chronic pain in lower back is responding to analgesics." A December 11, 2014 note stated "managing pain and functioning at current dosing." Moreover, Petitioner testified that in the short gap between seeing Dr. Jackson and Dr. Ashby, he was in extreme pain and suffering because he was not taking his medication.

any substance abuse issues.[13] The UR report did not point to any evidence to the contrary. The ALJ, in deciding to credit the UR report, does not discuss the urine tests contained in the medical records or any of the specific comments contained in Dr. Ashby's treatment records. Although it may be true that oxycodone use alone is not appropriate in certain cases, the ALJ was required to weigh the evidence in the record suggesting that the oxycodone had alleviated Petitioner's pain, and the evidence suggesting that Petitioner had fully complied with his medication regimen.

Accordingly, we reverse and remand the case for re-examination of the record and findings and conclusions not inconsistent with this opinion.

*So ordered.*

---

[13] Petitioner's credible testimony, the urine tests, and ALJ Bertram's statement that he didn't "think there's a problem with the opioid part" all supported a finding that Petitioner was not abusing the oxycodone.