*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-AA-1654

MIRNA PLACIDO, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

COMPASS GROUP USA, INC. and GALLAGHER BASSETT SERVICES, INTERVENORS.

Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-121-12)

(Submitted December 13, 2013     Decided June 5, 2014)

*David J. Kapson* was on the brief for petitioner.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, filed a statement in lieu of brief.

*Barry D. Bernstein* was on the brief for intervenors.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

MCLEESE, *Associate Judge*: Petitioner Mirna Placido challenges a decision

of the Compensation Review Board ("CRB") denying her claim for workers' compensation benefits.  We affirm.

**I.**

In August 2010, Ms. Placido injured her left shoulder and back while working as a food preparer for intervenor Compass Group USA, Inc.  Dr. Joel D. Fechter, an orthopedic specialist, treated Ms. Placido's injuries.  Dr. Fechter initially administered injections for the pain, restricted Ms. Placido to light duty, and recommended home exercise and physical therapy.  Although her back pain improved, Ms. Placido continued to experience intermittent pain in her left shoulder.  After an MRI scan, Dr. Fechter reported that Ms. Placido had two choices:  She could "live with the symptoms, manage[] them symptomatically as best she can, or . . . undergo arthroscopic evaluation and treatment of the left shoulder."

Ms. Placido sought authorization for arthroscopic shoulder surgery, which Compass Group denied.  In support of the denial, Compass Group relied on independent medical evaluations ("IMEs") conducted by Dr. Robert O. Gordon, an orthopedic specialist, and a utilization review ("UR") report prepared by Dr. Reese

Polesky, an orthopedic surgeon. The parties then proceeded to an evidentiary hearing before an administrative law judge ("ALJ").

The ALJ denied Ms. Placido's claim for workers' compensation benefits, concluding that the surgery was not medically reasonable or necessary. First, the ALJ found that Dr. Fechter had "not strongly recommend[ed] the left shoulder surgery." The ALJ explained that Dr. Fechter had suggested "the option of living with the symptoms[,]" had told Ms. Placido that undergoing surgery did not "guarantee . . . improvement," and had reported that he believed that "rotator cuff repair was not likely to be necessary because he saw no evidence of a cuff tear on the MRI and [Ms. Placido] had full strength of her cuff on clinical exam." The ALJ thus concluded that Dr. Fechter had not "set forth [a] persuasive rationale [for] proceed[ing] with the surgery." Second, the ALJ relied on the conclusions of the UR report and the IME physician that the surgery was not medically reasonable or necessary. The ALJ noted that the IME physician had concluded that Ms. Placido's "very mild symptoms [did] not warrant surgery . . . and . . . the MRI [did] not support invasive measures." The ALJ also credited the UR report, which concluded that "there [were] no significant functional deficits, as shown by the most recent MRI, to support the request for surgical intervention at this time."

The CRB affirmed.

## II.

"Our limited role in reviewing the decision of the CRB permits us to reverse only if we conclude that the decision was arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *Washington Hosp. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 983 A.2d 961, 965 (D.C. 2009) (internal quotation marks omitted). "Although our review in a workers' compensation case is of the decision of the CRB, not that of the ALJ, we cannot ignore the compensation order which is the subject of the CRB's review." *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (internal quotation marks and brackets omitted). The CRB must affirm a compensation order if the ALJ's factual findings are supported by substantial evidence and the ALJ's legal conclusions flow rationally from those facts. *Id*.

## III.

Ms. Placido first argues that the District of Columbia Workers' Compensation Act ("WCA"), D.C. Code § 32–1501 et seq. (2012 Repl.), and prior

CRB decisions preclude the ALJ "from weighing the opinions of an IME doctor in determining the . . . reasonableness and necessity of medical treatment . . . ." We disagree.

"The proper construction of a statute raises a question of law . . . ." *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008). Although this court generally resolves legal questions de novo, *see id.*, the court ordinarily accords deference to an agency's interpretation of a statute that the agency administers, unless the "interpretation is unreasonable or is inconsistent with the statutory language or purpose." *District of Columbia Dep't of Env't v. East Capitol Exxon*, 64 A.3d 878, 880–81 (D.C. 2013) (internal quotation marks omitted). Moreover, the "court generally defers to an agency's interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent with the regulations." *District of Columbia Office of Tax & Revenue v. BAE Sys. Enter. Sys.*, 56 A.3d 477, 481 (D.C. 2012) (internal quotation marks omitted).

Utilization review is a procedure for determining the "necessity, character, and sufficiency of both the level and [the] quality of medically related services provided to an injured employee . . . ." D.C. Code § 32-1501 (18A) (2012 Repl.); 7 DCMR § 232.3 (2014). "[T]he [CRB] has held that, if there is a dispute about

the necessity of proposed medical treatment, utilization review is the mandatory first step in the resolution of that dispute." *Children's Nat. Med. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 992 A.2d 403, 410 (D.C. 2010). Neither the UR statute nor the applicable regulations expressly say whether an ALJ may consider an IME physician's opinion in determining whether medical services are reasonable or necessary. D.C. Code § 32-1501 (18A); 7 DCMR § 232.1 to .8.

The CRB concluded in this case that it was permissible for the ALJ to consider an IME physician's opinion as evidence supporting the UR report. The CRB said that "[t]here is no prohibition on considering the evidence as a whole when determining" whether the treating-physician's opinion or the UR report "deserves greater weight . . . ."

We have previously indicated that an ALJ reviewing a benefits determination made after UR could appropriately consider an IME physician's opinion. *See, e.g.*, *Hisler v. District of Columbia Dep't of Emp't Servs.*, 950 A.2d 738, 746 (D.C. 2008) ("The ALJ properly relied on the conclusion of the utilization review, which was supported by employer's medical expert, despite the contrary opinions of [the treating] physicians . . . ."); *see also Hensley v. District of Columbia Dep't of Emp't Servs.*, 49 A.3d 1195, 1202 (D.C. 2012) (substantial

evidence, including IME evidence, "supports the ALJ's reliance on the conclusions of the utilization review report"). It is unclear, however, whether the parties in those cases raised the precise argument that Ms. Placido raises in this case.

Assuming that the issue therefore remains an open one in this court, we defer to the CRB's conclusion that an ALJ may consider an IME physician's opinion when determining the reasonableness and necessity of medical services. First, Ms. Placido has not identified provisions of the UR statute or the applicable regulations that limit the ALJ's ability to consider relevant medical evidence. Second, it is reasonable for the CRB to conclude that the ALJ should consider *all* the relevant medical evidence before deciding whether particular medical services are reasonable or necessary. Third, a thorough UR would consider any IMEs that had previously been conducted, and an ALJ reviewing such a UR would thus often need to assess the IME in evaluating the reasonableness of the UR. Fourth, although Ms. Placido's brief quotes from a CRB decision that refers to the ALJ weighing only the treating-physician's opinion and the UR report, that same decision makes clear that the ALJ "is free to consider the medical evidence as a whole . . . ." *See, e.g.*, *Green*, CRB No. 08-208, 2009 WL 2058375, at \*3 (D.C. Dep't of Emp't Servs. June 17, 2009). In sum, we defer to the CRB's conclusion that the ALJ permissibly considered the IME physician's opinion.

**IV.**

Ms. Placido next argues that substantial evidence does not support the ALJ's finding that the proposed surgery was not medically reasonable or necessary. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reyes*, 48 A.3d at 164 (internal quotation marks omitted). "[O]nce the utilization review is completed . . . the report . . . is decisive on the issue of reasonableness and necessity of medical services unless specific reasons are articulated why it should not be decisive." *Hisler*, 950 A.2d at 746 (internal quotation marks omitted).

Here, the ALJ reasonably concluded that that the proposed shoulder surgery was not medically reasonable or necessary. First, the ALJ gave specific reasons for adopting the UR report: (1) the treating physician gave Ms. Placido the option of living with the injury and (2) the treating physician had not articulated a persuasive justification for the surgery. Second, Ms. Placido has not shown that the substantive conclusion of the UR report was incorrect.

Instead, Ms. Placido argues that her treating physician's suggestion that she

could live with the injury does not undermine the treating physician's suggestion that she have surgery, because refusing surgery is always an option. Even if the ALJ could have interpreted the evidence that way, the ALJ acted reasonably by instead interpreting the evidence as suggesting that the treating physician did not view surgery as essential. We therefore cannot disturb the ALJ's determination. *Cf., e.g.*, *Hildreth Consulting Eng'rs, P.C. v. Larry E. Knight, Inc.*, 801 A.2d 967, 972 (D.C. 2002) ("Where the facts admit of more than one interpretation, the appellate court must defer to the trial court's judgment.") (internal quotation marks omitted).

Ms. Placido also argues that the ALJ acted inconsistently by accepting the treating physician's testimony on medical causation but not on the necessity and reasonableness of the surgery. The ALJ was free, however, to decide which parts of the treating physician's testimony to accept and which to reject. *See, e.g.*, *Payne v. United States*, 516 A.2d 484, 495 (D.C. 1986) (fact-finder "is always free to accept parts of a witness' testimony and reject other parts"). We therefore conclude that substantial evidence supports the ALJ's finding that the proposed surgery was not medically reasonable or necessary.

The judgment of the CRB is

*Affirmed.*