*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-AA-696

KEVATTE A. JONES,
PETITIONER,

FILED 05/04/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES,
RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
INTERVENOR.

On Petition for Review of a Decision of the
Compensation Review Board
(CRB-095-13)

(Submitted May 27, 2015                           Decided May 4, 2017)

*Krista N. DeSmyter* was on the brief for petitioner.

*Eugene A. Adams*, Interim Attorney General for the District of Columbia at the time the brief was filed, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Mary L. Wilson*, Senior Assistant Attorney General, filed a statement in lieu of brief for respondent.

*Kathryn H.S. Pett*, General Counsel, Washington Metropolitan Area Transit Authority, and *Sarah O. Rollman*, Chief Counsel, were on the brief for intervenor.

Before THOMPSON and BECKWITH, *Associate Judges*, and BELSON, *Senior Judge*.

BELSON, *Senior Judge*:  Kevatte A. Jones petitions this court for review of a decision of the Compensation Review Board ("CRB") that denied, in part, her claim for permanent partial disability.  Petitioner, who was injured while employed as a bus driver, contends that the CRB erred as a matter of law when it concluded that she was prohibited from presenting, to support her claim, evidence that because of her injury she could not meet the physical requirements of her previous job as a deputy sheriff.  Without a clear explanation of the basis of the CRB's conclusion, we are unable to determine whether the CRB's decision was a reasonable interpretation of the statute that it administers, and, therefore, remand the matter to the CRB for further consideration so that it can set forth more clearly the basis for its decision.

**I.**

Petitioner was hired by the Washington Metropolitan Area Transit Authority ("WMATA") as a bus driver on August 6, 2007.  On September 25, 2007, petitioner — while operating her employer's bus — was involved in a crash in which the bus "jumped a curb," then "hit a building and a pole."  AHD No. 08-309A, Compensation Order at 2 (June 26, 2013) [hereinafter "Compensation Order"].  The crash caused petitioner's head to strike the driver's side window, and

caused her left arm and left knee to strike the left side panel of the bus. The respective impacts injured petitioner's head and left arm, leg, and knee.

Prior to being hired by WMATA, petitioner had worked as a deputy sheriff for the Arlington County Sheriff's Department for a period of ten years. But one year after she sustained an injury to her left knee while working as a deputy sheriff in 2006, she ceased that line of work and began working as a bus driver for WMATA. Petitioner testified that after she was injured while driving a bus for WMATA she unsuccessfully attempted to return to her career in law enforcement. Petitioner asserts that — due to the injury she suffered as a bus driver — she cannot meet the physical standards that local law enforcement agencies require of their job applicants.

Following the accident, on October 12, 2007, petitioner came under the care of Dr. Joel Fechter. Petitioner was cleared to return to full-duty work on November 5, 2007, and obtained employment as a bus driver for Prince George's County Schools.[1] Petitioner experiences no difficulties in performing all of the duties required of her for that job, save for her inability to wash the bus she drives.

---

[1] After the accident, petitioner, a probationary employee, was terminated by WMATA. The record, however, is unclear as to the date on which petitioner was terminated.

Between October 2007 and June 2012, petitioner underwent a variety of treatments under the care of Dr. Fechter to rehabilitate her from her various injuries. Full recovery, however, was not attained, and on June 13, 2012, Dr. Fechter concluded that petitioner "had reached maximum medical improvement." In light of his medical opinion, Dr. Fechter provided permanent partial impairment ratings of 32% for petitioner's left upper extremity and 25% for her left lower extremity. At WMATA's request, petitioner was examined by a second physician, Dr. Stephen R. Matz, on January 22, 2013. Dr. Matz assigned disability ratings of 10% for the left upper extremity and 15% for the left knee, of which he attributed 5% to her September 25, 2007, injury while driving for WMATA.

At a formal hearing before a Department of Employment Services ("DOES") Administrative Law Judge ("ALJ"), petitioner submitted "evidence of her industrial history," specifically her previous work experience as an Arlington County deputy sheriff, "to demonstrate her diminished ability to compete in the labor market because of her work injury." CRB No. 13-095, Decision and Order at 2 (June 10, 2014) (footnote omitted) [hereinafter "Decision and Order"]. She testified that she was unable to perform the push-ups, running, and dragging of heavy objects necessary to obtain such job. The ALJ, however, did not permit detailed testimony regarding petitioner's former employment, and did not consider

petitioner's inability to return to her former employment in assessing her permanent partial disability schedule award. The ALJ ruled that while her "work as a police officer would certainly be relevant" if she were seeking a permanent impairment disability award with respect to an injury sustained as a police officer, petitioner had ceased working as a police officer, was employed as a bus driver when she was injured, and was seeking a permanent partial disability award for injuries sustained as a bus driver. The ALJ awarded petitioner 12.5% permanent partial disability of the left arm and 16% permanent partial disability of the left leg. Petitioner appealed, and the CRB affirmed, concluding that petitioner had no right to introduce the evidence of the physical demands of her prior employment. The CRB reasoned that petitioner's employer "is only responsible for compensating a claimant for work-related injuries," and "is not a guarantor of prior employment and is only responsible for compensating . . . disabilities attributable to the employment duties at the time of injury."[2] Therefore, the CRB affirmed the

---

[2] The CRB explained its ruling more fully as follows:

> [W]hen a claimant sustains an injury to a body part listed on the permanent partial disability schedule, the claimant may be entitled to an award in the amount of 66 2/3 % of his average weekly wage multiplied by a percentage of the number of weeks set forth in the Act for the particular schedule member [citing D.C. Code § 32-1508 (3) and § 32-1508 (3)(V)(iii)]; the average weekly wage is computed at the time of the injury with the then-current

(continued . . .)

Compensation Order of the ALJ.

Petitioner timely petitioned for review of the CRB's decision and brings before us one issue for review: whether the CRB erred — as a matter of law —

_____

(. . . continued)

employer, and inherent in assessing the degree of the claimant's disability is consideration of the employment the claimant held at the time of injury, not employment held 10 years prior.

Just as an employer is not a guarantor of health and is only responsible for compensating a claimant for work-related injuries, an employer is not a guarantor of prior employment and is only responsible for compensating for work-related disabilities, specifically, those disabilities attributable to the employment duties at the time of injury. The dissent would permit a claimant to receive schedule member permanent partial disability benefits based upon a claimant's inability to return to employment held 10 years prior to the job during which the claimant was injured even though the claimant is capable of returning to work in the same position the claimant held at the time of injury. Evidence of that prior position is not admissible for this purpose because it is not relevant to the determination of the claimant's disability; the yardstick by which the potential for wage loss is to be measured is the claimant's employment at the time of injury, not employment with a different employer a decade before the injury. We are unwilling to increase employer's potential exposure for permanent partial disability awards by increasing the scope of acceptable factors to include a claimant's inability to return to the work capacity required by a prior employer, as opposed to the work capacity required by the employer at the time of the claimant's injury.

when it concluded that petitioner was not permitted to introduce evidence of "vocational history," specifically evidence that because of her injury she is not able to meet the physical requirements of service as a police officer or deputy sheriff in support of her claim for a schedule award of permanent partial disability under the relevant section of the District of Columbia Workers' Compensation Act ("WCA"). D.C. Code § 32-1508 (3) (2012 Repl.).

## II.

At the outset, we recognize the well-established principle that "it is the decision of the DOES [CRB] to affirm the hearing examiner's decision — and not the decision of the administrative law judge — that is under review." (*Carolyn*) *Jones v. District of Columbia Dep't of Emp't Servs.*, 41 A.3d 1219, 1221 (D.C. 2012). "[O]ur review is very limited," and "[w]e will affirm the CRB's decision unless it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting D.C. Code § 2-510 (a)(3)(A) (2001)).

Although we review the CRB's legal conclusions *de novo*, *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 683 A.2d 470, 472 (D.C. 1996), "[o]ur deference to CRB decisions 'extends to matters of

statutory interpretation.'" *Nixon v. District of Columbia Dep't of Emp't Servs.*, 954 A.2d 1016, 1019 (D.C. 2008) (quoting *Sodexho Marriott v. District of Columbia Dep't of Emp't Servs.*, 858 A.2d 452, 455 (D.C. 2004)). And "[w]e accord great weight to any reasonable construction of a regulatory statute by the agency charged with its administration" so long as it is "not plainly wrong or inconsistent with the legislature's intent." *Kelly v. District of Columbia Dep't of Emp't Servs.*, 76 A.3d 948, 954-55 (D.C. 2013) (internal quotation marks and citation omitted). Indeed, we sustain an agency's interpretation "even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance." *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1160 (D.C. 2012) (internal quotation marks and citation omitted).

We begin with a review of the WCA's pertinent text. D.C. Code § 32-1508 establishes that a claimant may be entitled to "compensation for disability," which D.C. Code § 32-1501 (8) defines as a "physical or mental incapacity because of injury which results in the loss of wages." This provision encompasses awards for total permanent disabilities, total temporary disabilities, and disabilities that are "partial in character but permanent in quality." D.C. Code § 32-1508 (1)-(3). For

this third category of disability awards, the statute sets out guidelines for a number of specific parts of the anatomy susceptible to injury;[3] such awards are known as "scheduled awards." D.C. Code § 32-1508 (3)(A)-(U).[4] If a schedule loss of a member is permanent but partial in nature, the schedule award "may" be "for proportionate loss or loss of use of that member." D.C. Code § 32-1508 (3)(S). It is such partial loss of use of members that forms the basis of petitioner's claim.

D.C. Code § 32-1508 (3) in pertinent part states simply that "the compensation shall be 66 2/3% of the employee's average weekly wages." In this connection, the CRB Decision and Order before us states: "[T]he average weekly wage is computed at the time of the injury with the then-current employer, and

---

[3] In addition to the specific guidelines contained in the statute, DOES "may" determine the extent of a claimant's disability under the schedule provision by utilizing the American Medical Association's Guides to the Evaluation of Permanent Impairment, along with the five "specific factors": (i) pain; (ii) weakness; (iii) atrophy; (iv) loss of endurance; and (v) and loss of function. *Negussie v. District of Columbia Dep't of Emp't Servs.*, 915 A.2d 391, 396-97 (D.C. 2007) (citing D.C. Code § 32-1508 (3)(U-i)).

[4] In contrast, non-schedule awards are calculated in relation to actual wage loss. D.C. Code § 32-1508 (3)(V).

inherent in assessing the degree of the claimant's disability is consideration of the employment the claimant held at the time of the injury, not 10 years prior."[5]

We observe that application of the statute in the manner petitioner urges would doubtless lead to results far different from the result reached by the CRB upon consideration of only her ability to work in the employment in which she was injured. Petitioner is arguing that the amount of worker's compensation for which her current employer is responsible should be based on her proportionate loss of the use of that member's ability to perform her prior more physically demanding job. Thus, hypothetically, while an injury to an employee's scheduled member might result in a permanent loss of 12.5% of that member's ability to perform at the employee's current job (as the ALJ found regarding petitioner's left arm) that same injury might result in, *e.g.*, a 35% loss of the member's ability to perform a prior job that was more demanding physically. That method would suggest a rate of workers' compensation not entirely related to current employment. In the case before us, the CRB decided that the amount of compensation to be awarded should be tied to the percentage loss of use of the scheduled member that claimant is

---

[5] Although the CRB Decision and Order refers to employment ten years prior, petitioner's employment as a deputy sheriff had ceased sometime in 2006 or 2007, *i.e.*, much less than ten years before she began to work as a bus driver for WMATA on August 6, 2007. She had worked as a deputy sheriff for ten years.

found to have suffered with respect to the work petitioner performed at the time of the injury (and, as the statute clearly requires, should be calculated on the basis of the employee's average weekly wages earned by the employee under the contract in force at that time).[6]

Petitioner argues that despite the WCA's failure to use the term "industrial use" or any variation thereof, this court's use of such terms entitles her to introduce evidence of her vocational history in support of a claim for permanent partial disability of a member. This court has published a number of opinions that include some variation of the term "industrial use." Four opinions have mentioned the

---

[6] As this court explains in *Dent v. District of Columbia Department of Employment Services*, 14-AA-527, issued today:

> In the case of permanent total loss or total loss of use of a scheduled member of the body, that prospective assessment has been legislatively determined and is fixed in the statute by reference to a formula: "66 2/3% of the employee's average weekly wages" multiplied by the number of weeks contained in the schedule award list for the specific part of the body. [D.C. Code § 32-1508 (3)(A-R).] In the case of permanent *partial loss* or loss of use of a scheduled member of the body, disability compensation may be made "for proportionate loss or loss of use of that member." D.C. Code § 32-1508 (3)(S).

*Id*. at 15-16.

term "industrial history,"[7] but significantly none of them involved claims for a level of compensation based upon jobs that were held prior to the present employment at the time of injury. Two opinions have included the term "industrial use,"[8] but as we explain below, application of that concept does not advance petitioner's claim. None of our opinions have made any attempt to define, explain, or expand upon the meaning of the terms "industrial history" or "industrial use" and their legal import. Rather, the terms have been used only in passing. *See Washington Post*, *supra*, 675 A.2d at 40-41 (quoting *American Mut. Ins. Co. v. (Willie) Jones*, 426 F.2d 1263, 1265 (D.C. Cir. 1970)) (noting that in measuring a claimant's degree of disability, an ALJ must take into consideration a number of factors, including the claimant's "industrial history"). This court's opinion in *Dent*, *supra* note 6, issued today, observes that the CRB in *Dent* has implicitly concluded that the District of Columbia is an industrial use jurisdiction. It has been held that in an industrial use jurisdiction, the "evidence of subsequent

---

[7] *See Logan v. District of Columbia Dep't of Emp't Servs.*, 805 A.2d 237, 242 (D.C. 2002); *Pro-Football, Inc. v. District of Columbia Dep't of Emp't Servs.*, 782 A.2d 735, 746 (D.C. 2001); *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 703 A.2d 1225, 1229 (D.C. 1997); *Washington Post v. District of Columbia Dep't of Emp't Servs.*, 675 A.2d 37, 40-41 (D.C. 1996).

[8] *See (Carolyn) Jones*, *supra*, 41 A.3d at 1226 n.8 (quoting the brief filed by petitioner in that case); *Negussie*, *supra* note 3, 915 A.2d at 395 (quoting the ALJ's compensation order).

earnings is relevant in showing that there has in fact been no loss of use, when the earnings were produced by use of the very member whose loss of use is in question."[9]  7 Lex K. Larson, *Larson's Workers' Compensation Law* § 86-04[5] at 86-22 (Matthew Bender, rev. ed. 2014).  It will be for the CRB on remand to consider the relevance of petitioner's ability to perform the work that petitioner had performed in a particular previous job, and to explain the basis for its conclusion.

The decision the CRB must make following remand of this case must take into account the holding of this court in *Dent*, *supra* note 6, which is being issued today.  *Dent* answers in the affirmative the question whether evidence of post-injury wage loss, or its absence, may be relevant to a worker's claim for permanent partial disability compensation.[10]  In so ruling, this court rejected the reasoning of

---

[9]  Larson goes on to refer to a Texas case in which a man had suffered an injury to his arm which the jury found total and permanent loss of use of the member.  *See* Larson, *supra*, § 86-04[5] at 86-22.  The appellate court reversed the verdict as manifestly contrary to the evidence that the worker had been using the arm in the same type of employment for as many hours per week as other iron workers and at the same rate of pay.  *Id.*  While Larson's treatise emphasizes the significance of "same type of employment," it does not — in so many words — deal with the relevance *vel non* of previous employment of a different nature.

[10]  In *Dent*, *supra* note 6, this court today affirms the CRB's Decision and Order in that case that overruled the CRB's 2007 *en banc* holding in *Corrigan v. Georgetown University*, CRB No. 06-094, 2007 D.C. Wrk. Comp. LEXIS 364

(continued . . .)

the *en banc* decision of the CRB in *Corrigan*, *supra* note 10. *Dent* concerned the relevance of evidence of earnings in post-injury employment, apparently in similar clerical work with presumably similar physical requirements. In contrast, petitioner's claim raises the specific question of the relevance of evidence of a claimant's incapacity to meet the physical requirements of employment that predated the position held at the time of injury. It will be for the CRB to determine on remand, in the first instance, whether the observation in *Dent* that principles of

_____

(. . . continued)
(Sept. 14, 2007), that post-injury wage loss could not be taken into account directly in determining the extent of disability. While the position of the CRB on that issue was not settled for some time after *Corrigan* was decided, it is clear that in recent years the CRB has adopted the view that *Corrigan* is no longer the law with respect to consideration of post-injury wage loss. *See Curtis v. Washington Metro. Area Transit Auth.*, CRB No. 16-021, 2016 WL 3810142, at *4 n.1 (June 22, 2016); *Lee v. Marriott Corp.*, CRB No. 15-134, 2016 D.C. Wrk. Comp. LEXIS 109, at *5 (Mar. 9, 2016); *Johnson v. Washington Metro. Area Transit Auth.*, CRB No. 15-142, 2016 WL 1086731, at *4 n.2 (Feb. 19, 2016); *Brown v. Washington Metro. Area Transit Auth.*, CRB No. 15-115, 2015 WL 9809887, at *3 (Dec. 21, 2015); *El Masaoudi v. UNO Chicago Grill*, CRB No. 15-093, 2015 D.C. Wrk. Comp. LEXIS 605, at *7-8 (Oct. 15, 2015).

Larson, *supra*, explains that the policy of excluding post-injury wage loss, embraced in *Corrigan*, is not applicable to all stages of the adjudication of scheduled injury cases. *See* § 86-04[5] at 86-22. Larson states, "The usual statement that subsequent earnings are immaterial in scheduled injury cases raises a special problem in loss-of-use cases. The statement is perfectly sound once it is settled that the impairment in question qualifies as a scheduled injury. But it has been held that evidence of subsequent earnings is relevant in showing that there has in fact been no loss of use . . . ." *Id.*

industrial use, as contrasted with physical use, apply in this jurisdiction has any effect on the relevance of evidence in this case.[11]

In its Decision and Order denying petitioner's appeal in this case, the CRB took note of its earlier ruling in *Corrigan*, *supra* note 10. In *Corrigan*, the CRB had noted the limited sense in which the terms "industrial capacity" and "industrial use" could be used in this jurisdiction in considering whether a claimant's actual wage loss, or absence thereof, can be considered in assessing the extent of a claimant's disability. *See* 2007 D.C. Wrk. Comp. LEXIS 364, at \*30. In this case, petitioner argued before the CRB that her "industrial history" of working as a deputy sheriff and her inability to resume such employment are relevant to her claim against WMATA. In its Decision and Order, the CRB quoted *Corrigan* in connection with its reservations about considering such "industrial history." The CRB went on to cite language of the statute dealing with the computation of the amount of a claimant's award — albeit without explanation of how that language supports its ruling — and added, again without explanation, that an employer "is not a guarantor of prior employment and is only responsible for compensating . . .

---

[11] In "physical use" jurisdictions, partial loss of use is "measured by actual physical loss, and the employee's particular trade [is] not to be considered." Larson, *supra*, § 86-04[5] at 86-23.

disabilities attributable to the employment duties at the time of injury."[12]  In light of the somewhat opaque bases for the CRB's ruling here and this court's ruling in *Dent* today, we remand for a clear explanation of the bases of the CRB's Decision and Order on Remand.  In reaching its findings and conclusions, the CRB shall consider all applicable statutory provisions and case law, including *Dent*'s statement that "[d]etermining the extent of disability . . . requires a highly fact-bound inquiry and determination that takes into account the particulars of the individual claimant, such as employment skills, experience, age, education, and reasonable prospects."

It is not enough to say, as the CRB decision under review does, that "the average weekly wage is computed at the time of the injury with the then-current employer, and inherent in assessing the degree of the claimant's disability is consideration of the employment the claimant held at the time of injury." *Id.*  The CRB is directed to consider on remand, in the first instance, the issue whether, in determining the extent of disability experienced by petitioner as the result of her injury, it is appropriate under the circumstances of this case to take into account only the effect of the injury on petitioner's capacity to perform the work required by the employment in which she experienced her injury, or whether under the

---

[12]  See *supra* note 2.

circumstances, her capacity to perform the work required by previous or other employment is sufficiently relevant to merit consideration. In making this determination, the CRB is to apply the provisions of the WCA and take into account all relevant case law,[13] previous decisions of the CRB itself, treatises, and any other pertinent legal authority.

## III.

For the foregoing reasons, we remand the matter to the CRB for further proceedings consistent with this opinion.

*So ordered.*

---

[13] The relevant case law includes the following reference in (*Carolyn*) *Jones*, *supra*, 41 A.2d at 1224 ("[I]n making a legal determination of disability, the ALJ comes to a conclusion based on a complex of factors, taking into account physical impairment and potential for wage loss, and the application of judgment based on logic, experience and even 'prediction,' and considering any disability determination by the ALJ, once made . . . .").