*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-AA-848

08/31/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

BRENDA JOHNSON, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

FEDERAL EXPRESS CORPORATION and
SEDGWICK CLAIMS MANAGEMENT SERVICES, INTERVENORS.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-50-16)

(Argued June 8, 2017                                    Decided August 31, 2017)

*Krista N. DeSmyter* for appellant.

*Lisa A. Zelenak*, with whom *Elizabeth D. Cardona* was on the brief, for intervenors.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, filed a statement in lieu of brief for respondent.

Before FISHER, EASTERLY, and MCLEESE, *Associate Judges.*

MCLEESE, *Associate Judge*:  Petitioner Brenda Johnson seeks review of decisions by the Compensation Review Board (CRB):  (1) concluding that Ms. Johnson suffered from adjustment disorder and major depression, but not post-traumatic stress disorder (PTSD), as a result of a work-related incident; (2) awarding Ms. Johnson temporary total-disability benefits for the period from January 31, 2012, through July 3, 2012, but denying such benefits for the period thereafter; and (3) ordering intervenors Federal Express Corporation and Sedgwick Claims Management Services (collectively "FedEx") to pay Ms. Johnson's medical expenses for treatment related to her adjustment disorder and major depression.[1]  We remand to the CRB for further consideration.

## I.

The following evidence was presented at an evidentiary hearing before an Administrative Law Judge (ALJ).  Ms. Johnson worked for FedEx for over twenty-

---

[1]  Several versions of Federal Express's precise name have been used during these proceedings.  We use the version used in the CRB's most recent order and in the text of FedEx's brief in this court.

six years as a carrier and operations agent. During a meeting on Friday, January 27, 2012, FedEx supervisors told Ms. Johnson and five coworkers that their positions were going to be eliminated as a result of an internal reorganization. FedEx offered Ms. Johnson a different position, but the position was part-time and Ms. Johnson believed that the position was beyond her physical abilities. Ms. Johnson returned to work on Monday, January 30, but left early after having a breakdown. Ms. Johnson has not worked in any capacity since January 2012.

In February 2012, Ms. Johnson began seeing a therapist, Patricia Carter, who diagnosed Ms. Johnson with adjustment disorder with mixed anxiety and depression resulting from her job loss. In June 2012, Ms. Johnson sought alternative medical treatment with Dr. Alan Brody, a psychiatrist. Dr. Brody diagnosed Ms. Johnson with PTSD and major depression resulting from her termination on January 27, and he restricted her from working. In July, Dr. Bruce Smoller, a neuropsychiatric specialist, conducted an independent medical examination of Ms. Johnson. Dr. Smoller concluded that Ms. Johnson had "an exaggerated normal human reaction" that "skim[med] the border of a psychiatric disorder." Dr. Smoller stated that Ms. Johnson had no work restrictions, and he expressed doubt about her need for continuing psychiatric treatment.

The ALJ initially concluded that Ms. Johnson's condition was not compensable because the elimination of her position was not an "accidental injury" covered by the District of Columbia Workers' Compensation Act (WCA). On appeal, the CRB remanded, concluding that under *Ramey v. District of Columbia Dep't of Emp't Servs.*, 950 A.2d 33 (D.C. 2008), Ms. Johnson's claim could be compensable under the WCA if Ms. Johnson demonstrated a psychological injury and an actual workplace condition or event that could have caused or aggravated that injury.

A new ALJ was assigned to the matter on remand. That ALJ reopened the record, over Ms. Johnson's objection, and instructed the parties to provide evidence of definitions, criteria, and symptoms with respect to PTSD and adjustment disorder. The ALJ ultimately concluded that Ms. Johnson suffered from adjustment disorder -- but not major depression or PTSD -- as a result of her termination. The ALJ awarded Ms. Johnson temporary total-disability benefits from January 31 through July 3, 2012.

On appeal, the CRB affirmed the ALJ's conclusions that Ms. Johnson suffered from adjustment disorder, that she did not have PTSD, and that she was entitled to temporary total-disability benefits from January 31 through July 3,

2012. The CRB remanded the case, however, for the ALJ to determine whether FedEx had rebutted the presumption of compensability with respect to Ms. Johnson's diagnosis of major depression.[2] On remand, the ALJ determined that FedEx had rebutted the presumption and that Ms. Johnson had not proven that she had major depression. The CRB reversed, concluding that Dr. Smoller's report was insufficient to rebut the presumption, because the report did not specifically address whether Ms. Johnson's diagnosis of major depression was correct or whether that condition was causally related to Ms. Johnson's termination. Accordingly, the ALJ issued an order on remand confirming that Ms. Johnson suffered from major depression as a result of her termination and requiring FedEx to pay for Ms. Johnson's medical expenses and care resulting from that injury. The CRB affirmed.

---

[2] The WCA includes a presumption of compensability. *McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191, 1198 (D.C. 2008) (en banc). A claimant must provide some evidence of a "disability and a work-related event, activity, or requirement which has the *potential* of resulting in or contributing to the . . . disability." *Id.* at 1199 (internal quotation marks omitted). "The presumption then operates to establish a causal connection between the disability and the work-related event, activity, or requirement." *Id.* (internal quotation marks omitted). If the employer presents substantial evidence showing that the disability is not causally related to the claimant's employment, the presumption drops out of the case and the burden is on the claimant to prove entitlement to WCA benefits by a preponderance of the evidence. *Id.* & n.6.

## II.

### A.

"Our limited role in reviewing [a] decision of the CRB permits us to reverse only if we conclude that the decision was arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *Placido v. District of Columbia Dep't of Emp't Servs.*, 92 A.3d 323, 326 (D.C. 2014) (internal quotation marks omitted). We will not disturb a decision of the CRB if that decision flows rationally from findings of fact that are supported by substantial evidence. *McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191, 1195-96 (D.C. 2008) (en banc).

> Although this court generally resolves legal questions de novo, the court ordinarily accords deference to an agency's interpretation of a statute that the agency administers, unless the interpretation is unreasonable or is inconsistent with the statutory language or purpose. Moreover, the court generally defers to an agency's interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent with the regulations.

*Placido*, 92 A.3d at 326 (citations and internal quotation marks omitted).

**B.**

Ms. Johnson argues that the ALJ erred by reopening the record after the initial hearing to receive new evidence. We remand for further proceedings on that issue.

The CRB concluded that the ALJ was permitted to reopen the record pursuant to D.C. Code § 32-1525 (a) (2017 Supp.), which states: "In . . . conducting a hearing the [ALJ] shall not be bound by . . . technical or formal rules of procedure, except as provided by this chapter, but may . . . conduct such hearing in such manner as to best ascertain the rights of the parties." Considered in isolation, § 32-1525 (a) seems to grant ALJs broad authority to reopen hearings. Section 32-1525 (a), however, explicitly requires ALJs to adhere to "formal rules of procedure" contained in Chapter 15 of Title 32. One such formal rule of procedure is D.C. Code § 32-1520 (c) (2012 Repl.), which provides that "[n]o additional information shall be submitted by the claimant or other interested parties after the date of hearing, except under unusual circumstances." That provision by its terms requires unusual circumstances to be present before a hearing may be reopened to permit the parties to submit additional information. *Jones v. District of Columbia Dep't of Emp't Servs.*, 584 A.2d 17, 19 (D.C. 1990).

The CRB concluded that D.C. Code § 32-1520 (c) was not applicable because the ALJ reopened the record sua sponte rather than at the request of a party. In light of governing precedent, we cannot accept that reading of § 32-1520 (c). Nothing in the text of that provision suggests that an ALJ acting of its own accord may choose to ignore the limitation on the submission of additional evidence after a hearing. Moreover, the CRB did not attempt to explain why it would make sense as a policy matter to impose strict limits on reopening the record at the behest of the parties but freely permit such reopening at the initiative of the ALJ. Finally, the CRB's predecessor (the Director of the Department of Employment Services) took the position that unusual circumstances must be present before an ALJ can reopen a hearing to take additional evidence. *Jones*, 584 A.2d at 18-19. Specifically, 7 DCMR § 223.4 (2017) provides that if an ALJ believes there is "relevant and material evidence available which has not been presented at a formal hearing, the [ALJ] may order the parties to acquire and submit the evidence. The [ALJ] may also . . . reopen for receipt of the evidence." Like D.C. Code § 32-1525 (a), 7 DCMR § 223.4 considered in isolation seems to grant ALJs broad authority to reopen the record after an evidentiary hearing. The CRB's predecessor long ago took the position, however, that § 223.4 must be read in conjunction with § 32-1520 (c) and therefore permits post-hearing reopening of

the record only in "unusual circumstances." *Jones*, 584 A.2d at 18-20. We upheld that interpretation of § 223.4 in *Jones*. *Id.* Section 223.4 is explicitly directed at the authority of an ALJ to reopen the record, and is therefore applicable to this case. The CRB's reason for concluding that the ALJ permissibly reopened the record is irreconcilable with both the position of the agency in *Jones* and our reasoning in *Jones* that § 223.4 must be understood in light of § 32-1520 (c).

We therefore conclude that post-hearing reopening of the record was permissible in this case only if there were unusual circumstances permitting such reopening. In reopening the record, the ALJ relied on § 223.4, but did not make any finding as to unusual circumstances. On review, the CRB concluded that if D.C. Code § 32-1520 (c) and 7 DCMR § 223.4 applied, reopening would not be permissible because there were no unusual circumstances warranting reopening. Perhaps because the CRB was upholding the ALJ's decision to reopen on alternative grounds, the CRB provided no explanation for its conclusion that the circumstances were not unusual. FedEx argued to the CRB that in fact the circumstances were unusual, because (1) it is unusual for a new ALJ to handle a case on remand that had previously been handled by a different ALJ, and (2) the new ALJ did not have the opportunity to participate in the hearing and ask for the desired information at that time. The CRB did not explicitly address these

arguments. Under the circumstances, we must remand the matter to the CRB for the CRB to provide a reasoned decision on the question whether the circumstances in this case were sufficiently unusual to permit post-hearing reopening of the record. *See, e.g.*, *Jones v. District of Columbia Dep't of Emp't Servs.*, 158 A.3d 906, 907 (D.C. 2017) (remanding for CRB to "more clearly [explain] the basis for its decision").

If the CRB concludes on remand that the record should not have been reopened, it must reconsider the issues in this case without relying upon the information provided by the parties after the hearing concluded. Such reconsideration might well render academic some or all of the other issues raised by the parties in this court. We nevertheless address those issues, because they will recur if the CRB determines on remand that the ALJ permissibly reopened the record, and because they may recur even if the CRB determines otherwise.

## C.

Ms. Johnson argues that the ALJ erred by relying on a definition of PTSD from a medical dictionary, because neither party had introduced that definition into

evidence, the definition related to a disputed factual matter, and neither party was given an opportunity to respond to the definition. We agree.

In the first compensation order on remand, the ALJ relied substantially on information from a medical dictionary that had not previously been introduced into evidence. The ALJ's conclusion that Ms. Johnson did not suffer from PTSD was based in part on the ALJ's rejection of Dr. Brody's definition of PTSD, which the ALJ stated was inconsistent with the definition of PTSD from the medical dictionary.

ALJs have the authority in appropriate circumstances to take official notice of facts that have not been introduced into evidence. *See, e.g.*, *Renard v. District of Columbia Dep't of Emp't Servs.*, 673 A.2d 1274, 1276 (D.C. 1996). "Facts officially noticed must be of the type which are susceptible to such notice." *Id.* "A judicially noticed fact must be one not subject to reasonable dispute . . . ." *In re A.B.*, 955 A.2d 161, 167 (D.C. 2008) (internal quotation marks omitted). Given that the parties in this case were contesting the precise definition of PTSD, including what circumstances can trigger PTSD, the ALJ could not properly take official notice of a definition of PTSD taken from a particular medical dictionary that was not part of the record.

**D.**

Ms. Johnson argues that the ALJ applied an incorrect standard in assessing Ms. Johnson's PTSD claim. We agree.

The ALJ gave a number of reasons for concluding that Ms. Johnson failed to show that she was suffering from PTSD. One of those reasons was that PTSD is caused by an "intensely traumatic event," and Ms. Johnson's termination "did not rise to the level that it could be characterized as an intensely traumatic event." We see three problems with this reasoning. First, as we have already noted, the ALJ impermissibly relied in part on a medical dictionary that was not in evidence. Second, neither that dictionary nor the other medical evidence before the ALJ supported a flat conclusion that Ms. Johnson's termination could not have resulted in PTSD. Rather, as described by the ALJ, the medical dictionary indicated only that the event must be "intensely traumatic" or "catastrophic." In addition, Dr. Smoller's discussion of PTSD, on which the ALJ also relied, was not entirely clear. At times Dr. Smoller seemed to suggest that a threat to life and limb is required for PTSD, whereas at other points he seemed less categorical, stating for example that the cause of PTSD "is usually a sudden, unanticipated catastrophic

event" that is "usually a higher order of insult to the mind and body . . . than [is required] for adjustment disorder."  In contrast, Dr. Brody's definition stated that PTSD "can develop after exposure to any physically or psychologically traumatic event" and that the individual's experience of the event determines whether or not the event was traumatic.  Third, in determining whether a psychological injury is compensable under the WCA, the inquiry is not into whether a "hypothetical average or healthy person" would have suffered the injury.  *See, e.g.*, *Muhammad v. District of Columbia Dep't of Emp't Servs.*, 34 A.3d 488, 494-95 (D.C. 2012) ("The controlling standard . . . is that the [WCA] neither requires, nor permits, use of an objective test under which an employee seeking compensation for psychological injuries must show that an average person not predisposed to such injury would have suffered a similar injury.") (brackets and internal quotation marks omitted).  In deciding whether Ms. Johnson's termination caused Ms. Johnson to suffer from PTSD, the ALJ may of course appropriately take into account evidence indicating that PTSD usually is caused by more traumatic events. But the ultimate question is whether in fact Ms. Johnson's termination caused Ms. Johnson to suffer from PTSD, not whether termination from employment would normally cause that condition.

**E.**

In reviewing medical evidence, the ALJ must give preference to the conclusions of a treating physician over those of a non-treating physician who was retained to examine a claimant solely for the purposes of litigation. *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 985 A.2d 431, 432 (D.C. 2009). "[A]lthough the opinion of a treating physician is ordinarily entitled to significant weight, a hearing examiner may discount a treating physician's opinion if the examiner sets forth specific and legitimate reasons for doing so." *Mexicano v. District of Columbia Dep't of Emp't Servs.*, 806 A.2d 198, 205 (D.C. 2002) (internal quotation marks omitted). Ms. Johnson challenges the ALJ's reasons for rejecting Dr. Brody's conclusion that Ms. Johnson's termination caused Ms. Johnson to suffer from PTSD. We agree in part with Ms. Johnson.

The ALJ rejected Dr. Brody's opinion for several reasons: (1) Ms. Johnson transferred her treatment to Dr. Brody without giving Ms. Carter any indication that Ms. Johnson intended to stop receiving treatment from Ms. Carter; (2) Dr. Brody wrote a doctor's note requesting additional time off for Ms. Johnson, and that note inaccurately stated that Ms. Johnson was under Dr. Brody's care and was being treated, when in fact at that time Ms. Johnson was not yet under Dr. Brody's

care and Dr. Brody had not evaluated her or prescribed her any medication; (3) Dr. Brody did not have a complete understanding of the circumstances regarding Ms. Johnson's termination, including FedEx's offer of alternative work opportunities, Ms. Johnson's entitlement to severance, and her eligibility for retirement; and (4) Dr. Brody's definition and criteria for PTSD were not consistent with the information provided by Dr. Smoller and the definition from the medical dictionary.

One of the ALJ's reasons for rejecting Dr. Brody's opinion was entirely appropriate: the ALJ was reasonably concerned about the note from Dr. Brody that "mischaracterize[d] his relationship with" Ms. Johnson and misrepresented the status of Ms. Johnson's care and treatment. The ALJ's other reasons are problematic. First, it is not clear why Dr. Brody's diagnosis would be materially undermined by any failure of Ms. Johnson to notify Ms. Carter in advance that Ms. Johnson was going to transfer her treatment to Dr. Brody. Moreover, there was evidence that Ms. Carter had recommended that Ms. Johnson see a doctor to get medication to help with Ms. Johnson's anxiety and that Ms. Johnson had in fact notified Ms. Carter of her decision to shift her treatment to a doctor. Second, it is not clear why Dr. Brody's diagnosis would be materially undermined by the omission from Dr. Brody's report of reference to certain of the circumstances

surrounding Ms. Johnson's termination, such as her entitlement to severance and the availability of other jobs at FedEx. Dr. Smoller's report also did not refer to those circumstances, but the ALJ found that report to be "substantial and comprehensive." Finally, the ALJ criticized Dr. Brody for his "misleading attempt to re-define [adjustment disorder and PTSD]." The ALJ's conclusion on that score, however, rested in part on impermissible consideration of a medical dictionary that was not in evidence.

**F.**

Ms. Johnson also challenges the CRB's determination that although Ms. Johnson suffers from major depression as a result of her termination and is entitled to payment of her medical expenses with respect to that condition, she is entitled to wage-loss benefits only through July 3, 2012. We remand for further proceedings as to whether Ms. Johnson suffered from disabling depression after July 3, 2012.

Ms. Johnson argues that she suffers from major depression as a result of her termination, her depression prevents her from returning to work, and she is therefore entitled not only to payment of her medical expenses but also to wage-loss benefits. The ALJ initially ruled that Ms. Johnson did not suffer either from

major depression or from PTSD. As follows inevitably from that premise, the ALJ also concluded that Ms. Johnson was not disabled by those conditions. Because we are remanding for further proceedings with respect to whether Ms. Johnson suffers from PTSD, we ordinarily would at a minimum remand for the ALJ to consider whether, if she does, that condition (alone or in combination with depression) is disabling. We follow that course here, but we also remand more broadly for further consideration of whether Ms. Johnson suffered from disabling depression after July 3, 2012.

In concluding that Ms. Johnson had not demonstrated that she was disabled beyond July 3, the ALJ gave some reasons that could be viewed as suggesting that Ms. Johnson had failed to show disability even assuming that she did suffer from PTSD or major depression. But the ALJ's discussion of the extent of Ms. Johnson's disability explicitly rested in part on the conclusion that Ms. Johnson did not suffer from PTSD, and the ALJ made only one passing reference to depression. Moreover, much of the ALJ's analysis regarding the nature and extent of Ms. Johnson's disability centered on the ALJ's rejection of Dr. Brody's opinion. As noted above, some of the ALJ's reasons for rejecting Dr. Brody's opinion are problematic. We are not confident that the ALJ's disability ruling was independent of the ALJ's conclusions that Ms. Johnson did not suffer from either PTSD or

depression. We remand for further proceedings with respect to whether, and if so to what extent, Ms. Johnson is disabled based on major depression or, if she is ultimately determined to suffer from work-related PTSD, by PTSD and depression in combination. *Cf., e.g.*, *Citizens Comm. for D.C. Video Lottery Terminal Initiative v. District of Columbia Bd. of Elections & Ethics*, 860 A.2d 813, 814 (D.C. 2004) (discussing prior remand to agency for clarification as to whether ruling rested on independent ground).

## G.

Finally, Ms. Johnson contends that she should be awarded temporary total-disability benefits beginning on January 27, 2012, rather than January 30, 2012. In the first compensation order on remand, the ALJ found that Ms. Johnson was "disabled from all work" from January 27 through July 3, 2012, but ultimately determined -- without further explanation -- that Ms. Johnson was disabled beginning on January 30, 2012. On appeal to the CRB, Ms. Johnson argued that the starting date for her disability should be January 27, 2012. Without expressly addressing that issue, the CRB stated that Ms. Johnson's disability began on January 30, 2012. Ms. Johnson raises that issue again in this court, and FedEx

does not expressly address it. We therefore remand for the CRB to expressly address the issue.

## III.

For the foregoing reasons, we remand the case to the CRB for further proceedings.

*So ordered.*