*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-AA-1014

RICHARD M. HAWK, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

BREDE EXPOSITION SERVICES and LIBERTY MUTUAL INSURANCE CO., INTERVENORS.

On Petition for Review of a Decision and Order of the
District of Columbia Department of Employment Services
(CRB-80-19)

(Submitted September 15, 2020                    Decided February 11, 2021)

*David M. Snyder* for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Carl J. Schifferle*, Acting Deputy Solicitor General, filed a statement in lieu of a brief for respondent.

*Robin Cole* for intervenors.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and MCLEESE, *Associate Judges*.

MᴄLᴇᴇsᴇ, *Associate Judge*:  Petitioner Richard Hawk challenges the amount of his workers' compensation award, arguing that the award rested on an incorrect calculation of his average weekly wage.  We affirm.

**I.**

Except as noted, the following facts appear to be undisputed.  Mr. Hawk, who is a journeyman carpenter, injured his back in July 2018 while setting up a trade show for intervenor Brede Exposition Services.  Mr. Hawk is concededly entitled to workers' compensation benefits as a result of his injury, and the sole issue is how to calculate Mr. Hawk's average weekly wage for purposes of determining the amount of compensation.

As a journeyman carpenter, Mr. Hawk does not regularly work for a particular employer.  Instead, Mr. Hawk receives notice of specific jobs through his local union, which he then accepts or declines based on preference and availability.  Hourly salaries for union carpenters are set by collective bargaining agreement, and the number of hours available to work depends on the job.

Brede regularly contracts with local unions to employ carpenters and other skilled workers to work on trade shows and conventions. Brede employs journeyman carpenters for all of its roughly seventy-five jobs per year. Although Brede occasionally hires the same union carpenters for repeat jobs, Mr. Hawk had not been previously hired by Brede on a regular basis.

Immediately before his injury, Mr. Hawk had worked for Brede for five days and had earned $1,663.76. Journeyman carpenters typically have a busy season from the middle of January through June, but their work often slows during the summer. During the slow months, many union carpenters, including Mr. Hawk, collect unemployment benefits. Mr. Hawk testified that he had earned approximately $55,000 in the twelve months preceding his injury, but he presented pay stubs reflecting that he had earned only $18,634.19 in the twenty-six weeks preceding his injury.

Mr. Hawk argued to the Administrative Law Judge (ALJ) that his average weekly wage should be calculated as $1,663.76. To get that figure, Mr. Hawk relied on the amount he was paid by Brede during the week before his injury. *See* D.C. Code § 32-1511(a)(6) (2019 Repl.) (where claimant "has not worked in this employment during substantially the whole of the period," average weekly wage is

five times average daily wage that similarly situated employee working in same or similar employment "shall have earned in the employment during the days when so employed").

Brede argued to the ALJ that Mr. Hawk's approach would result in a windfall, providing Mr. Hawk with compensation that substantially exceeded both what he had actually earned in the past and what he could reasonably be expected to earn in the future. Brede contended that Mr. Hawk's average weekly wage was $716.70, based on a weekly average of Mr. Hawk's total earnings over the twenty-six weeks preceding his injury. *See* D.C. Code § 32-1511(a)(4) (2019 Repl.) (if employee's wages at time of injury were fixed by hour or day and employee did not work for employer for preceding twenty-six weeks, average weekly wage is based on amount employee would have earned during preceding twenty-six weeks working for employer in similar occupation "when work was available to other employees").

Applying § 32-1511(a)(4), the ALJ calculated Mr. Hawk's average weekly wage to be $716.70. The ALJ relied on the sporadic nature of work as a journeyman carpenter, with busy and slow seasons as well as periods of unemployment and receipt of unemployment benefits. The ALJ concluded that it would be unreasonable to compensate Mr. Hawk as though he would have had consistent full-time work had

he not been injured. Under that approach, Mr. Hawk's average annual income would be over $86,000, which far exceeded the amount Mr. Hawk actually earned in the year before his injury. Instead, the ALJ considered how much work was actually available to Mr. Hawk and similarly situated employees. Specifically, the ALJ adopted Brede's position that Mr. Hawk's average weekly wage should be the total amount Mr. Hawk earned over the prior twenty-six weeks, divided by twenty-six weeks.

In taking into account the amount of work actually available to employees like Mr. Hawk, the ALJ relied on *LaRose*, Dir. Dkt. No. 95-79, 1999 DC Wrk. Comp. LEXIS 549 (Dep't Emp't Servs. Apr. 2, 1999). That case also involved a union carpenter who was injured while working for one employer and who had worked for other employers in the preceding weeks. *Id.* at *1. The claimant argued that his average weekly wage should be based solely on his most recent employment. *Id.* The Director of the Department of Employment Services instead calculated the claimant's average weekly wage by taking into account a longer period of time. *Id.* at *1-4. Specifically, the Director divided the total wages the claimant had earned over that time period from several employers by the number of weeks in the time period, including weeks when the claimant did not work. *Id.* at *2-4. Explaining that the claimant's compensation was similar to that of a seasonal worker, the

Director indicated that including periods when the claimant had not worked would provide the best reflection of what the claimant actually earned. *Id.* at *3-4.

Mr. Hawk appealed the ALJ's decision in this case to the Compensation Review Board (CRB), which affirmed. The CRB agreed with the ALJ's reliance upon *LaRose*. The CRB also relied on this court's statement that "[w]orkers' compensation is to be so calculated as to produce an honest approximation of claimant[s'] probable future earning capacity." *United Parcel Serv. v. District of Columbia Dep't of Emp't Servs.*, 834 A.2d 868, 872 (D.C. 2003) (internal quotation marks omitted).

## II.

"Our limited role in reviewing the decision of the CRB permits us to reverse only if we conclude that the decision was arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *Washington Hosp. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 983 A.2d 961, 965 (D.C. 2009) (internal quotation marks omitted). "Although our review in a workers' compensation case is of the decision of the CRB, not that of the ALJ, we cannot ignore the compensation order which is the subject of the CRB's review." *Placido v. District of Columbia*

*Dep't of Emp't Servs.*, 92 A.3d 323, 326 (D.C. 2014) (internal quotation marks omitted). "The CRB must affirm a compensation order if the ALJ's factual findings are supported by substantial evidence and the ALJ's legal conclusions flow rationally from those facts." *Id*. "Although this court generally resolves legal questions de novo, the court ordinarily accords deference to an agency's interpretation of a statute that the agency administers, unless the interpretation is unreasonable or is inconsistent with the statutory language or purpose." *Id.* (citation and internal quotation marks omitted).

Applying these principles, we affirm the order of the CRB. We view the analysis of the ALJ and the CRB, as described above, to be reasonable and adequately supported by substantial evidence in the record. We are not persuaded by Mr. Hawk's arguments to the contrary.

Although his brief is not entirely clear, it appears that Mr. Hawk is no longer arguing that his average weekly wage should have been determined based on § 32-1511(a)(6) rather than § 32-1511(a)(4). Rather, Mr. Hawk seems to be arguing that the ALJ and the CRB misapplied § 32-1511(a)(4). We disagree.

First, Mr. Hawk appears to argue that the record does not support the ALJ's finding that the work of journeyman carpenters, including Mr. Hawk, was seasonal and sporadic. That finding, however, was amply supported by the previously noted evidence of the sporadic and to some degree seasonal nature of Mr. Hawk's employment and of work as a journeyman carpenter in general.

Second, Mr. Hawk raises what is at bottom a question of statutory interpretation. Mr. Hawk's argument rests on a factual premise: even if a typical journeyman carpenter would not be able to obtain full-time work for an extended period, there was at least some work available for some journeyman carpenters at all times during the year. We do not understand that factual premise to be disputed. From that premise, Mr. Hawk argues that § 32-1511(a)(4) required that his average weekly wage be calculated as though he had worked full time for Brede for the twenty-six weeks preceding his injury. In making that argument, Mr. Hawk relies on the following highlighted language in § 32-1511(a)(4): the average weekly wage is calculated as "the amount the employee would have earned had the employee been employed by the employer for the full 26 calendar weeks immediately preceding the injury and had worked, *when work was available to other employees, in a similar occupation*." Both the ALJ and CRB construed this language to permit

consideration of the seasonal or sporadic nature of Mr. Hawk's work as a journeyman carpenter. We conclude that this interpretation is reasonable.

In isolation, the statutory language at issue is ambiguous. The words "when work was available to other employees, in a similar occupation," do not make clear whether the inquiry is into the practical availability of work to similar employees or instead into the theoretical availability of work to any possible similar employee. As we have explained, the CRB gave a reasoned explanation of its reasons for taking into account the practical availability of work to Mr. Hawk and similar journeyman carpenters. We defer to the CRB's reasonable explanation.

Third, Mr. Hawk argues that the Workers' Compensation Act is a humanitarian statute that should be given a liberal construction. *See, e.g.*, *Stackhouse v. District of Columbia Dep't of Emp't Servs.*, 111 A.3d 636, 638-39 (D.C. 2015). The CRB, however, reasonably gave effect to the well-settled principle that the workers' compensation system is intended to "produce an honest approximation of claimant[s'] probable future earning capacity," *United Parcel Serv.*, 834 A.2d at 872 (internal quotation marks omitted), and should not result in unjust enrichment for claimants, *4934, Inc. v. District of Columbia Dep't of Emp't*

*Servs.*, 605 A.2d 50, 56 (D.C. 1992). *See generally, e.g.*, *Stackhouse*, 111 A.3d at 639 (upholding CRB's reasonable resolution of conflicting considerations).

Finally, Mr. Hawk relies on *Marcoux*, CRB No. 16-033, 2016 WL 4166022 (D.C. Dep't Emp't Servs. July 25, 2016). In *Marcoux*, the claimant was a union carpenter, but he was also employed by a temporary employment agency, doing a variety of jobs when union carpentry work was unavailable. *Id.* at *1. The claimant was injured while working for the employment agency. *Id.* The ALJ calculated the claimant's average weekly wage under § 32-1511(a)(6), using the claimant's employment-agency earnings, not his earnings as a union carpenter. *Id.* at *8-9. The ALJ also apparently made no adjustment to the claimant's average weekly wage to account for periods when the claimant was not working. *Id.* The CRB upheld the ALJ's ruling. *Id.* We do not view *Marcoux* as supporting Mr. Hawk's arguments before this court. As noted, *Marcoux* involved an interpretation of § 32-1511(a)(6). Mr. Hawk no longer relies on that provision, which in contrast to § 32-1511(a)(4) does not contain language about the availability of work. Because Mr. Hawk does not raise the issue before us, we have no occasion to consider, and express no view about, the questions whether (1) the CRB ought to have applied § 32-1511(a)(6) rather than § 32-1511(a)(4) to calculate Mr. Hawk's average weekly wage in this

case and (2) if so, how § 32-1511(a)(6) would properly have applied to determine

Mr. Hawk's average weekly wage.

For the foregoing reasons, the judgment of the CRB is

*Affirmed.*